(44 Misc. Rep. 360.)

CAHILL v. HOGAN, Mayor, etc., et al.

(Supreme Court, Special Term, Albany County.   July, 1904.)

1. CONSTITUTIONAL LAW—SPECIAL ACT—TITLE.

Laws 1904, p. 1493, c. 629, is entitled "An act to amend chapter 389 of the Laws of 1903," relating to the government of the city of Troy, and creating a municipal improvement commission, enlarging its powers, and providing for additions to Prospect Park and to the waterworks of the city, and authorizing the issuing of bonds for such improvements.  *Held*, that the provisions of the second portion of the act constitute specifications of the particulars in which the prior act is amended, and limit the extent to which the body of the amendment may amend the prior act; and where, in addition to such matters, it is provided for a change in the personnel of the commission, which purpose was not set forth in the title of the amending act, so much of it as makes such change is in violation of Const. art. 3, § 16, providing that the subject of a local bill must be expressed in its title.

2. MUNICIPAL CORPORATIONS—BOND ISSUE.

Laws 1904, p. 1493, c. 629, authorizing the city of Troy to issue bonds for a municipal improvement, running more than 20 years, which, when taken with outstanding bonds, will exceed 10 per cent. of the assessed valuation of the city, and not requiring the city to establish a sinking fund to redeem the bonds at maturity, in so far as it authorizes such issue, is void, as in violation of Const. art. 8, § 10, limiting the indebtedness of cities.

Action by John F. Cahill against Joseph F. Hogan, mayor of the city of Troy, and others.   Motion for temporary injunction.   Granted.

This action has been commenced by a citizen and taxpayer of the city of Troy, asking that chapter 629, p. 1493, of the Laws of 1904, be declared to be unconstitutional and void, and asking an injunction restraining the so-called "Municipal Improvement Commission in the City of Troy" from doing a variety of acts specified in such complaint, and restraining and enjoining the mayor and corporation counsel of the city of Troy from acting as members of such municipal improvement commission.   Chapter 576, p. 1331, of the Laws of 1893, being an act entitled "An act relative to the waterworks department of the city of Troy and to provide for an increased supply of water in the said city," provided a detailed plan for the construction and maintenance of waterworks in that city, and authorized the borrowing and expenditure of money to carry out the purposes of the act.   By chapter 370, p. 873, of the Laws of 1900, the former act was amended, and provided that the powers and duties theretofore conferred upon the water commissioners should thereafter be performed and discharged by the commissioner of public works of the city of Troy.   Chapter 389, p. 891, of the Laws of 1903, entitled "An act in relation to the city of Troy, the government of said city, and to create a municipal improvements commission, and to define its powers and duties," provided as follows:   "Section 1. There shall be a commission in the city of Troy, to be known as a municipal improvements commission, to be composed of the comptroller, president of the common council and commissioner of public works of said city."   It gives such commissioners power and control over the construction and maintenance of the said waterworks, of the parks, and of the streets passing through or intersecting said parks, authorized them to perform all the duties and exercise the same powers that were theretofore given to and imposed upon the commissioner of public works of the city of Troy.   It is also provided that they should have the power and duties devolved upon a board of commissioners for the selection and purchase of a site for a public driveway as provided by an act of the Legislature known as "chapter 315, p. 873, of the Laws of 1902," entitled "An act to lay out, establish and regulate a public driveway in the city of Troy."   The act in question here—chapter 629, p. 1493, of the Laws of 1904—is entitled "An act to

amend chapter three hundred and eighty-nine of the Laws of nineteen hundred and three, entitled 'An act in relation to the city of Troy, the government of said city, and to create a municipal improvements commission, and to define its powers and duties,' and to enlarge the powers and duties of said commission and to provide for additions and improvements to Prospect Park and to the waterworks of the city of Troy under the supervision of said commission and to authorize the issuing of bonds for such additions and improvements and to amend section twenty-four of chapter five hundred and seventy-six of the Laws of eighteen hundred and ninety-three, entitled 'An act relative to the waterworks department of the city of Troy and to provide for an increased supply of water in the said city,' as amended by chapter three hundred and seventy of the Laws of nineteen hundred, relative to the issue of bonds for the extension of the waterworks and an increased supply of water for the city of Troy." The first section of this act amended section 1 of chapter 389, p. 891, of the Laws of 1903, by adding the mayor and corporation counsel of the city to the municipal improvement commission.

James C. Fursman (Edgar L. Fursman, of counsel), for the motion.
George C. Lecomte (John T. Norton, of counsel), opposed.

HERRICK, J. The statute in question is asserted by the plaintiff to be in violation of section 16 of article 3 of the state Constitution. That section reads as follows:

"No private or local bill which may be passed by the Legislature, shall embrace more than one subject, and that shall be expressed in the title."

It is unnecessary to discuss the question as to whether chapter 629, p. 1493, Laws of 1904, is a local bill. It will, I think, be conceded to be such. Does it embrace more than one subject, and is that subject sufficiently expressed in the title? Its title may be divided into three parts, as follows: First.

"An act to amend chapter three hundred and eighty-nine of the Laws of nineteen hundred and three, and entitled 'An act in relation to the city of Troy, the government of said city, and to create a municipal improvements commission and to define its powers and duties.'"

The second part is a specification of the manner in which the act is to be amended, and reads as follows:

"And to enlarge the powers and duties of said commission and to provide for additions and improvements to Prospect Park and to the waterworks of the city of Troy under the supervision of said commission and to authorize the issuing of bonds for such additions and improvements."

The third is a statement that still another act is to be amended, and is as follows:

"And to amend section twenty-four of chapter five hundred and seventy-six of the Laws of eighteen hundred and ninety-three, entitled 'An act relative to the waterworks department of the city of Troy and to provide for an increased supply of water in said city,' as amended by chapter three hundred and seventy of the Laws of nineteen hundred, relative to the issue of bonds for the extension of the waterworks and an increased supply of water for the city of Troy."

If the matters set forth in the second and third parts of the title are germane to the principal matter—that is, an amendment to chapter 389, p. 891, Laws 1903—then they are specifications of the particulars in which it was proposed to amend that chapter. If they are not germane to such matter, but something in addition to amending the chapter

named, then the title embraces more than one subject, and the act would be void for that reason. An examination of chapter 389 shows that the matters set forth in the second and third parts of the title as above set forth are germane to an amendment to such chapter, and it therefore seems clear to me that they are specifications of the particulars in which it was proposed it should be amended. By thus specifying the particulars in which it was proposed to amend the former statute, a limitation was placed upon the extent to which the body of the act of 1904 might amend such statute. The several sections of the act provide for just those things specified in the second and third parts of the title of the act, as I have above divided such title, and no more, with the exception hereinafter referred to; that is to say, the act enlarges the powers and duties of the commission; it provides for additions and improvements to Prospect Park and to the waterworks of the city of Troy under the supervision of said commission; it authorizes the issuing of bonds for such additions and improvements; and it amends section 24 of chapter 576, p. 1346, of the Laws of 1893, as amended by chapter 370, p. 873, of the Laws of 1900. But, in addition to the matters thus specifically set forth in the title of the act, the body of the act changes the composition of the municipal improvement commission by adding thereto the mayor and corporation counsel. Assuming, but not deciding, that the different matters referred to in the act under consideration are all embraced in one subject, to wit, the government of the city of Troy, yet the provisions of the act were not sufficiently expressed in the title, because by expressing specifically in what respects it proposed to change and add to existing laws, the Legislature precluded itself from going further, and by such specification excluded the assumption that the body of the act would contain anything else. This construction is sustained by the case of People ex rel. Corscadden v. Howe, 177 N. Y. 499, 69 N. E. 1114. The statute under consideration there was chapter 127, p. 387, of the Laws of 1902. It was entitled "An act to amend chapter two hundred and sixty-one of the Laws of eighteen hundred and eighty-five, entitled 'An act in relation to the management of the Albany Penitentiary, relative to the salary of the keeper of said penitentiary.'" The body of the act amended section 4 of the original act of 1885 (Laws 1885, p. 457, c. 261) in several particulars. It provided that the salary of the superintendent should be fixed by the commission, instead of being established at the rate of $3,000 a year. It also authorized the commissioners, whenever in their discretion it seemed to be for the best interests of the county of Albany, to dispense with the services of the superintendent, and to place the penitentiary in the custody and care of the sheriff, and, if deemed advisable, to close and discontinue the same, and sell the lands and buildings. Assuming to act under the authority granted by this statute, the commissioners notified Mr. Corscadden, who was superintendent, that they would place the penitentiary in the hands of the sheriff of Albany county, and would remove the relator from his office as superintendent. Thereupon Mr. Corscadden brought an action to restrain the commissioners from removing him from his office and from transferring the penitentiary to the sheriff, alleging in his complaint, among other things, that the statute under which they claimed to act was unconstitutional, in that it violated section 16 of

article 3 of the Constitution; and in passing upon that question the court said:

"The difficulty with the statute is, not that it embraces more than one subject, but that that subject is not sufficiently expressed in the title. The whole matter of the regulation, custody, and disposition of the penitentiary, the number and grades, the appointment, terms, tenure, and salaries of its officers, might properly constitute but a single statute. But the divisibility of subjects is very much akin to the divisibility of matter, and most subjects include things which may be treated as mere details of the greater subjects, or as independent subjects in themselves. The object of the constitutional requirement was to 'advise the public in general and members of the Legislature in particular by the title of the bill what interests are likely to be affected by its becoming law.' People ex rel. Burroughs v. Brinkerhoff, 68 N. Y. 259. Therefore it is very apparent that the title of a bill may be so limited as to exclude provisions which unquestionably could fairly be enacted in a single statute with a more comprehensive title. In the title of the statute before us it is stated that the purport of the act is not merely to amend 'An act in relation to the management of the Albany Penitentiary,' but to amend it only in one particular and on one subject—the salary of the keeper of the penitentiary. To our minds, such a title not only fails to advise the public and the Legislature that any other details of the penitentiary management than the salary of the keeper are affected by the bill, but is substantially a proclamation to the contrary. * * * In the present case we think that the title of the bill, instead of apprising the public that it was intended to bestow powers upon the commissioners to discontinue the penitentiary, or turn it over to the sheriff, tended to avert attention from the subject."

See, also, Matter of City of Rochester v. Bloss, 77 App. Div. 28, 79 N. Y. Supp. 236, affirmed 173 N. Y. 646, 66 N. E. 1105.

That, as a matter of fact, the legislators and the people of Troy, in this particular case, had knowledge of that portion of the act which was not specified in the title, makes no difference in determining the sufficiency of the title. The question in these cases always is, was the title sufficient to give notice of the intended legislation? and that must always be determined solely by an inspection of the act itself, not by an investigation any time the sufficiency of the title of a bill is in question, as to whether, as a matter of fact, the legislators and the people of the locality affected by it had knowledge of the contents of the bill. I conclude, therefore, that that portion of chapter 629, p. 1493, of the Laws of 1904, making the mayor and corporation counsel of the city of Troy members of the municipal improvements commission of that city, is void, the purpose to do so not being expressed in the title to the act.

The act is also challenged as being in violation of section 10 of article 8 of the Constitution. It is contended that the provisions of the act in relation to borrowing money and issuing bonds therefor is in violation of the portions of that section reading as follows:

"No county or city shall be allowed to become indebted for any purpose or in any manner to an amount which, including existing indebtedness, shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation, as it appeared by the assessment rolls of said county or city on the last assessment for state or county taxes prior to the incurring of such indebtedness. * * * Nor shall this section be construed to prevent the issue of bonds to provide for the supply of water; but the terms of the bonds issued to provide the supply of water shall not exceed twenty years, and a sinking fund shall be created on the issuing of the said

bonds for their redemption, by raising annually a sum which will produce an amount equal to the sum of the principal and interest of said bonds at their maturity. * * * Bonds issued to provide for the supply of water * * * shall be included in ascertaining the power of the city to become otherwise indebted."

By section 8 of the act in question the city of Troy is authorized to borrow the sum of $150,000, and by section 10 it is authorized to issue bonds to secure the repayment of such money, payable in not less than 5 nor more than 40 years. By section 15 the city of Troy is empowered to borrow the sum of $450,000, and to issue bonds therefor, payable in not less than 10 nor more than 60 years. By section 16 the city of Troy is authorized to borrow the sum of $1,700,000, and to issue bonds therefor, payable in not less than 10 nor more than 60 years. No sinking fund is provided for redeeming such bonds. The bonds authorized to be issued by sections 15 and 16 are for moneys to be used in extending and increasing the water supply of the city of Troy, and the contention is that they are in violation of that provision of the section above cited which provides that such bonds shall not be issued for a longer period than 20 years, and that a sinking fund shall be provided for their redemption at maturity. My own impression is that the 20-year limitation in the Constitution applies to all bonds issued to provide a supply of water for a city, but that opinion is in apparent conflict with the opinion of the court in the case of Sweet v. City of Syracuse, 129 N. Y. 316, 27 N. E. 1081, 29 N. E. 289. Since that decision the Constitution has been amended, and, whether the provision requiring the terms of such bonds not to exceed 20 years applies to all water bonds or not, it seems to me perfectly clear that it applies to a proposed issue of bonds that will, when added to the existing indebtedness, cause such indebtedness to exceed 10 per cent. of the assessed valuation of the real estate of the city or county. City of Rochester v. Quintard, 136 N. Y. 221–225, 32 N. E. 760.

As we have seen from the section of the Constitution above quoted, bonds already issued to provide for a supply of water must be included in ascertaining the power of the city to become otherwise indebted. It appears that the bonded indebtedness of the city of Troy on the 31st of December, 1903, was $3,217,587.53, and that such indebtedness at the date of the hearing upon this matter was $3,084,316.03, and that the assessed valuation of the real estate in the city of Troy subject to taxation, as it appeared upon the assessment rolls of the last assessment for state and county taxes prior to the passage of the act in question, was the sum of $50,989,946. As before stated, this act authorizes the borrowing of money and the issuing of bonds in payment therefor to the aggregate amount of $2,300,000, which would increase the indebtedness of the city of Troy to more than 10 per cent. of the assessed valuation of its real estate. It is argued, however, that it is not compulsory upon the city of Troy to borrow and issue bonds for that amount of money; that it may borrow much less; that it is not compulsory to issue its bonds for more than 20 years; that the act permits it to issue the bonds for a less period of time. While that is true, still the fact is that the act authorizes the city of Troy to borrow $2,300,000, and to issue bonds therefor, payable in more than 20 years. The validity of a law is to be tested by what may, by its authority, be done. Stuart v. Palmer, 74

N. Y. 183, 30 Am. Rep. 289; Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609. The validity of a statute must be determined by the nature, character, and scope of the powers attempted to be conferred, although they may not have been actually exercised. People ex rel. Balcom v. Mosher, 163 N. Y. 32–42, 57 N. E. 88, 79 Am. St. Rep. 552. Neither can the different sections of the act authorizing the issuing of bonds be considered separately, and be held valid severally, because the bonds authorized to be issued by each section would not increase the debt limit to more than 10 per cent. Nor can one section be held valid and another invalid because the issue of the bonds authorized by the one would not increase the debt above the permitted amount, while, if there was added to such issue of bonds the amount authorized by the other section or sections, the total amount would exceed the constitutional limit. The authority to create the indebtedness must be considered as a whole, the different sections by which it is authorized read together as an entirety. The different sections must stand or fall together. So read and considered, the several sections of the act authorizing the city of Troy to borrow money to the amount of $2,300,000, and to issue bonds therefor extending over a period of more than 20 years, and providing no sinking fund for their redemption, are, for the reasons above stated, repugnant to the Constitution, and void.

The constitutionality of the act is challenged in other particulars, but, in view of the conclusions at which I have arrived upon the questions already considered, it seems to me unnecessary to discuss the other alleged defects in the act.

For the reasons above given, let an injunction issue pending the trial of the action, restraining the mayor and corporation counsel of the city of Troy from acting as members of the municipal improvement commission, and restraining said commission from borrowing money or issuing bonds pursuant to the provisions of chapter 629, p. 1493, of the Laws of 1904.

Ordered accordingly.